STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.C., S.H., J.H.-1, and N.B.**

**No. 20-0507** (Nicholas County 19-JA-71, 19-JA-72, 19-JA-73, and 19-JA-74)

**MEMORANDUM DECISION**

Petitioner Father J.H.-2, by counsel Jason S. Lord,[1] appeals the Circuit Court of Nicholas County's May 26, 2020, order terminating his parental and custodial rights to B.C., S.H., J.H.-1, and N.B.[2] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Denise N. Pettijohn, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to require the DHHR to provide services adapted to meet his intellectual limitations, admitting and considering the testimony of S.H.'s therapist, terminating his improvement period, and terminating his parental and custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Petitioner was previously represented by Harley E. Stollings, who filed a brief on petitioner's behalf on appeal. Subsequently, Mr. Stollings filed a motion to withdraw as counsel, which was granted by this Court. By order entered on December 3, 2020, Jason S. Lord was appointed to represent counsel for the remainder of his appeal process.

[2]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as J.H.-1 and J.H.-2, respectively, throughout this memorandum decision.

Petitioner is the biological father of J.H.-1 and S.H. Petitioner's wife, V.H., is the biological mother of B.C., N.B., and J.H.-1. The DHHR filed a child abuse and neglect petition against petitioner and several other respondent parents in May of 2019. At the time the petition was filed, all four children lived with petitioner and V.H. The petition alleged that V.H. was arrested during a family court hearing for making terroristic threats against a DHHR worker, assaulting an officer, obstruction, and trespassing. The DHHR alleged multiple domestic violence incidents between petitioner, V.H., and C.K., petitioner's former girlfriend and the mother of S.H. The DHHR further alleged that petitioner's home was in deplorable condition despite ongoing services to address the issues since July of 2018.[3]

The circuit court continued the preliminary hearing on the motion of all the parties that the adult respondents be evaluated to determine their competency to assist their respective counsel in their defense and to understand the court proceedings. The circuit court ordered expedited psychological evaluations for all adult respondents.

Dr. Amelia Winsby, Psy.D., performed a psychological evaluation of petitioner in July of 2019. Petitioner's scores from the battery of tests performed by Dr. Winsby placed petitioner in the extremely low level of intellectual functioning and suggested there were moderate concerns with petitioner's ability to care for himself, let alone a child. Dr. Winsby opined that petitioner's prognosis for attaining minimally adequate parenting was guarded to fair. She expressed that the results of her evaluation found significant, but not insurmountable, barriers to reunification of the family. Dr. Winsby provided several recommendations should the circuit court deem reunification of the family appropriate. These recommendations included services such as adult life skills and parenting classes to occur once or twice weekly until petitioner demonstrated a solid understanding of the material, and then twice monthly indefinitely. Dr. Winsby also recommended that petitioner be appointed a guardian ad litem, which was ordered by the court following its receipt of Dr. Winsby's report.

The circuit court reconvened the preliminary hearing in August of 2019 and found that imminent danger existed to the children due to the home being in deplorable condition. The circuit court ordered that custody of the children remain with the DHHR and granted petitioner supervised visitation with S.H. and J.H.-1.

In September of 2019, the circuit court held an adjudicatory hearing wherein it adjudicated petitioner as an abusing parent. Testimony established that petitioner had a history and pattern of having a deplorable home, then cleaning the home upon the direction of the DHHR, only to return to the deplorable conditions afterwards. Services to address these conditions had been provided for several years, but petitioner was unable to maintain suitable housing. Upon visiting the home at the time of the petition's filing, there were open jars of rotten baby food on the floor, extreme clutter, and unsanitary conditions. The circuit court found that, at the time of the petition's filing, services were not effective due to petitioner's mental and intellectual disabilities.

Petitioner filed a motion for a post-adjudicatory improvement period in October of 2019. The circuit court held a hearing on the matter, wherein it heard the testimony of Dr. Winsby. The

---

[3]The circuit court later determined that petitioner had received services since 2016.

2

circuit court granted petitioner a post-adjudicatory improvement period, the terms of which included that petitioner submit to random drug screens, maintain suitable housing, obtain and maintain employment, and complete in-home services.

At a review hearing held in January of 2020, the children's guardian moved the circuit court to suspend visitation between petitioner and then-three-year-old S.H. after receiving a letter from S.H.'s therapist. The circuit court granted petitioner's motion for an extension of his improvement period, but it suspended his visitation with S.H. pending further testimony.

The circuit court held a hearing on the children's guardian's motion to suspend petitioner's visitation with S.H. in March of 2020. The guardian presented the testimony of S.H.'s therapist, Elizabeth Jennings. Ms. Jennings testified that she recommended suspending petitioner's visits with S.H. as the visits appeared to be traumatizing the child. Following visits between the child and petitioner, S.H. would shake, have severe tantrums, and lick his hands. Ms. Jennings also stated that the child regressed in his speech and called petitioner a "mean man" and a "scary monster." The foster mother reported to Ms. Jennings that S.H. defecated and urinated on himself following visits and that he experienced nightmares. After the visits between petitioner and the child were suspended at the prior hearing, Ms. Jennings observed positive differences in the child's behavior.

The guardian also presented the testimony of a service provider who testified regarding her observations of the supervised visits between petitioner and the children. The service provider testified that petitioner interacted well with the children but had to be instructed frequently regarding the children's needs. For example, petitioner would not change diapers or wipe the children's noses without specific instruction from the provider. The provider also remarked that petitioner had difficulty dividing his attention between the children and that on his last visit with S.H., the child defecated at least three times. Petitioner also had difficulty in providing size-appropriate clothing for the children and gave them drinks in dirty cups.

After hearing testimony, the circuit court suspended petitioner's visitation with the children. The circuit court found that S.H. did not thrive when visitation occurred and that visits were harmful to the child. Further, the circuit court found petitioner needed assistance with basic parenting skills, had to be instructed to change diapers and wipe noses, and generally failed to recognize the children's needs.

The circuit court held the dispositional hearing over the course of two days in May of 2020, during which it heard the testimony of two CPS workers, several service providers, and S.H.'s foster mother. At the close of evidence, the circuit court found that petitioner had a "continuing and repeated history of domestic violence and having a deplorable, unsanitary home" and that he was unable to provide proper parenting to the children. The circuit court further found that since the adjudicatory hearing, none of the circumstances had "changed which would lead the [circuit c]ourt to conclude that [petitioner is] able to properly parent [his] children in even the most basic ways." The circuit court noted that the testimony in the case demonstrated that petitioner was unable to provide basic, competent parenting due to his mental and intellectual disabilities and that the children regressed and failed to normally thrive while in his care. In contrast, the children responded and "progressed remarkably" while in foster care. As testified to by a CPS worker,

petitioner had been provided services since 2016 but consistently showed an inability to understand basic elements of proper parenting or to show any substantial progress. Based upon the evidence presented, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental and custodial rights was necessary for the children's welfare. It is from the May 26, 2020, dispositional order terminating his parental and custodial rights that petitioner appeals.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

In petitioner's first assignment of error, he argues that the circuit court erred in admitting and considering the testimony of S.H.'s therapist, Elizabeth Jennings. We easily dispense with this assignment of error because petitioner provides no argument whatsoever with regard to this claim. This failure is in direct contravention of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requiring that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in

---

[4]The mothers' parental rights were terminated below. The permanency plan for J.H.-1 and S.H. is adoption by their foster family. B.C.'s father voluntarily relinquished his parental rights to the child. The permanency plan for B.C. is legal guardianship with his grandmother. N.B.'s father is a nonabusing parent and the permanency plan for N.B. is to remain in his father's care.

4

compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to the admission and consideration of S.H.'s therapist's testimony is inadequate and entirely fails to comply with Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address this issue on appeal.

Petitioner next argues that the circuit court erred in terminating his post-adjudicatory improvement period. We find that the circuit court did not err in terminating petitioner's post-adjudicatory improvement period or by providing the particular services to petitioner that it did during the proceedings. First, petitioner was clearly granted a post-adjudicatory improvement period and an extension of the same during the proceedings. Any suggestion to the contrary by petitioner is without merit. Second, there is no indication that the circuit court prematurely terminated petitioner's post-adjudicatory improvement period. In January of 2020, the circuit court extended petitioner's post-adjudicatory improvement period, which expired on its own terms in March of 2020. While petitioner's visits with S.H. were suspended for some time, petitioner cites to no portion of the record demonstrating that other services were terminated. Further, petitioner seems to argue that the circuit court erred in refusing to grant him a post-dispositional improvement period. However, this argument is not asserted as an assignment of error and, even if it were, we refuse to address this issue on appeal as petitioner fails to cite to the record to establish that he requested a post-dispositional improvement period. This Court has long held, "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

Petitioner also claims that the service providers failed to provide him with services adapted to account for his intellectual limitations and further claims that a caseworker admitted this failure during testimony. However, petitioner makes these assertions without citing to the record to demonstrate how the services were inadequate or that the caseworker admitted to failing to provide adequate services. Moreover, petitioner fails to establish that he or his counsel argued below that the services provided were inadequate. Instead, the record establishes that petitioner had been provided services since 2016 but consistently showed an inability to demonstrate basic elements of proper parenting or show any substantial progress. Moreover, testimony demonstrated that service providers had to repeatedly tell petitioner when to perform basic parenting tasks despite prolonged services.

> "Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a

5

permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W.Va. 512, 678 S.E.2d 18 (2009). Here, there was no indication that petitioner could adequately care for the children even with long-term assistance. While petitioner cites to Dr. Winsby's testimony that petitioner's prognosis was guarded to fair, she noted that there were significant barriers to reunification and that petitioner would need to be dedicated to addressing his deficits in order to succeed in reunifying with the children. Moreover, Dr. Winsby recommended that "twice monthly or monthly services continue indefinitely" even after petitioner could demonstrate a solid understanding of skills taught through services. Dr. Winsby also noted that if petitioner was unable or unwilling to identify his deficits, reunification may not be appropriate. As noted above, petitioner was provided services for several years but still needed to be coached on even the most basic parenting skills during the underlying proceedings. At the time of the dispositional hearing, circuit court determined that the DHHR had provided the necessary services. Having reviewed the record, we find that appropriate services were provided but that petitioner failed to evidence the ability to care for the children even with intensive long-term assistance.[5]

To the extent that petitioner argues that the circuit court did not provide clear goals or guidelines, the circuit court gave petitioner goals as outlined in the order granting him a post-adjudicatory improvement period. Further, Dr. Winsby outlined recommendations for petitioner to reunify with the children, multidisciplinary team meetings were scheduled, and services were provided. There is no indication that petitioner was unaware of what conditions he needed to address during his improvement period, nor did he express his alleged confusion to the circuit court. Furthermore, the circuit court granted petitioner a guardian ad litem to aid him in the underlying proceedings. Given the forgoing, we find no error as petitioner was provided with services over the course of nearly four years but remained unable to demonstrate that he could adequately care for the child.

Lastly, petitioner argues that the circuit court erred in terminating his parental and custodial rights to the children. Petitioner contends that the circuit court's finding that he could not "overcome his intellectual deficits" is contrary to the expert testimony of Dr. Winsby. Petitioner contends that his intellectual disabilities are not a "disqualifying behavior" and should not deprive him of his natural right to the custody of his children. We find no error in the termination of petitioner's parental and custodial rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Another situation includes when

---

[5]Petitioner also seemingly argues that the circuit court erred in not requiring the DHHR to follow the guidelines set forth in *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). However, we find no merit in this assertion given the evidence as set forth above.

[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

W. Va. Code § 49-4-604(d)(3). Here, petitioner demonstrated an inadequate capacity to solve the problems on his own or with help. Despite the provision of services over the course of four years, petitioner remained unable to adequately parent the child. While we are not unsympathetic to petitioner's situation, he has failed to respond to or follow through with services designed to address the conditions of abuse and neglect. Petitioner has been unable to do so even with the assistance of both the DHHR and the children's grandparents. As noted by the circuit court, the children failed to thrive while in petitioner's care but progressed remarkably while in the foster parents' care. Moreover, continued visitation between petitioner and S.H. was noted to be detrimental to the child as he experienced negative behaviors during and after the visits. To the extent that petitioner argues a less-restrictive alternative to the termination of his parental and custodial rights should have been employed, we have previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of his parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 26, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison